## Spracale's Estate

*John E. Winner*, for accountant.

*Paul G. Schaefer*, for heirs and devisees.

*Robert L. Kirkpatrick*, for Workingman's Savings Bank & Trust Company.

*S. V. Albo*, for Leo Garish, claimant.

CHALFANT, J., May 21, 1935.—The widow of decedent claims the amount of two bank accounts included in the balance for distribution on the ground that they are tenancies by entireties. There is also a disputed claim for adjudication.

Decedent, who died February 26, 1934, was engaged in the wholesale fruit and produce business, but operated under the name of Spracale Fruit Company, which name was duly registered under the fictitious names act.

He had two checking accounts in the Workingman's Savings Bank & Trust Company in the name of Spracale Fruit Company. On the date of his death the balance in

account no. 9411 was $2,753.26, and in no. 12471 was $10,760.90.

On September 29, 1933, decedent and his wife went to the bank and executed two agreements identical in form, a copy of same being as follows:

"The Workingman's Savings Bank and Trust Company
Agreement of Husband and Wife establishing an
Estate by the Entireties

"We, the undersigned, hereby open a joint deposit account with the Workingman's Savings Bank and Trust company, and jointly and severally agree with respect thereto as follows: All deposits now or hereafter made therein shall be held and owned by us as tenants by the entireties with the right of survivorship, and not as tenants in common, and with the understanding and agreement that upon the death of either, the survivor shall thereupon be the sole owner of said account and the balance standing to the credit thereof; as a matter of convenience to us only and not as invalidating this estate by the entireties, the monies in said account shall, subject to the rules of said bank, be withdrawable at any time and from time to time by check or order of withdrawal signed by either of us; each of us hereby grants to the other full power and authority to endorse all checks, drafts and other instruments now or hereafter drawn or payable to the order of the other for deposit of same to said account; this agreement shall not be terminated or revoked except by written notice to that effect, signed by both of us and delivered to said bank, but the power and authority granted herein to each of us to sign checks or orders of withdrawal against said account and to endorse checks, drafts and other instruments now or hereafter drawn or payable to the order of the other and deposit same herein, may be revoked and terminated by either of us by written notice to said bank to that effect; should said account be closed at any time or times by withdrawal of the balance to the credit thereof, and later reopened, such reopened account or accounts shall

be subject to all the terms and conditions of this agreement.

"Upon the death of either of the undersigned, the other shall give immediate notice thereof to the bank; and the bank may, in its discretion, withhold further payment from the joint deposit account until such time as an executor or administrator of such deceased party shall have been duly appointed and qualified.

"In witness whereof, we have hereto set our hands and seals this Sep. 29, 1933.

S. Spragale          (Seal)          Anna X Spracale
                                       her
                                       mark

"Attest: We declare that the parties to the above agreement stated to us that they had read same and comprehended its full import and purpose and they then and there severally and jointly acknowledged that same expressed their wishes and intention, and that they signed same in our presence in evidence thereof.

"M. L. Meyer          Jack Spracale"

While the style of the accounts was not changed, notation of the interest of Mrs. Spracale was made on the ledger and new signature cards taken, on which were the signature of decedent and the mark of his wife and also the words "either to sign." This was a sufficient delivery to pass to the wife an interest in the accounts: Reap, Exec., v. Wyoming Valley Trust Co. et al., 300 Pa. 156.

The widow has since died and letters testamentary have been issued on her estate.

It is conceded the agreements established a joint tenancy, but counsel for the estate of the husband maintains that an estate by entireties could not be created because the accounts were carried under an assumed name. With this position we cannot agree. The fact that the accounts were carried in another name did not change the relationship of husband and wife nor affect their agreement. In the absence of authority to the contrary we must hold

that the widow was entitled to the amount of deposits at the time of decedent's death.

For a short time after his death the accounts were considered by the bank as belonging to the widow, but the style of the account was not changed. On March 9, 1934, she and four of her sons entered into a partnership under the name of Spracale Fruit Company and account no. 9411 was transferred to it. The balance in this account was inventoried as part of decedent's estate and carried into the balance for distribution at $12,511.59. This was a mistake, as the balance in this account at the time of decedent's death was $2,753.26. The difference between this amount and $12,511.59, or $9,758.33, was deposited in the account after decedent's death and never came into the hands of accountant, nor was he entitled to it. This sum should be deducted from the balance for distribution and the sum of $2,753.26, which was the property of the partnership, distributed to it.

The other account, no. 12471, designated as a special account, having a balance of $10,760.90, was also inventoried as part of the estate and included in the balance. On the death of decedent this became the property of the widow by survivorship and should be distributed to her estate.

Leo Garish presented a claim for $1,000, which he contends is due him for money loaned from partnership funds without his consent. He and decedent were equal partners in the wholesale fruit business for a number of years. In 1920 decedent loaned from partnership funds the sum of $2,000 to a man named Ceresia, who was a customer of the firm, and took from him a note to the order of Spracale and Garish. In 1926 the partnership was dissolved and the assets equally distributed, except the note in question. Claimant maintains that the loan was a personal one and should not have been made from partnership funds, and that on several occasions, as late as 1932, decedent acknowledged this and promised to pay him his share. Claimant knew, however, that the note had been ·

carried on the books as a firm asset, and both before and after the dissolution asked a son of decedent to try and collect it. In 1930 claimant asked the son if he had been able to collect anything on account. Since it was an asset of the partnership and not distributed it became the joint property of the individual partners upon the dissolution, and is so recognized by the estate of decedent. If there was any question about this it should have been settled at that time.

There is not sufficient evidence to establish an agreement by decedent to pay claimant one half of the note, nor was there any consideration to support such a promise. The claim cannot be allowed.

The claim of the New Van Cold Storage Company is admitted in the sum of $300, but since it appears that there are other claims in litigation and that money will be required for inheritance taxes no distribution to creditors can be made at this time.

After distribution of the cash in the two bank accounts the balance will be distributed to accountants for further accounting.